

# NUMBER 13-09-00255-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| DAVID GRAY, | Appellant, |
|---|---|

v.

| ANN WOOD SHOOK, | Appellee. |
|---|---|

### On appeal from the 24th District Court
### of Victoria County, Texas.

# DISSENTING OPINION

### Before Justices Yañez, Benavides, and Vela
### Dissenting Opinion by Justice Yañez

I respectfully dissent to the majority's conclusion that the trial court abused its discretion in this case. A trial court does not abuse its discretion when there is some evidence of a substantive and probative character to support its decision.[1] In some cases, the parental presumption can be rebutted by other evidence establishing the

---

[1] *Whitworth v. Whitworth*, 222 S.W.3d 616, 623 (Tex. App.–Houston [1st Dist.] 2007, no pet) (op. on reh'g).

statutorily required negative effect on the child even when there is no evidence establishing any particular blameworthy act of the parent.[2] "Because safety, security, and stability are critical to child development, the danger of uprooting a child may in some instances rise to a level that significantly impairs the child's emotional development."[3]

Here, Green testified that G.W. suffers from separation anxiety, a condition she defined as a fear of being separated from either the parent or person of significance. Green testified that G.W. considers Shook her "primary parent" and feels "safe" in Shook's home. The evidence showed that G.W. has lived with Shook since she was born and has never known another home.

Green stated that stability and consistency are very important to a child who experiences anxiety. Green testified that consistency is also an important factor in bonding with a child and that when there are infrequent visits or large gaps between the visits, bonding will not occur. Green opined that a child is unable to bond with a person who only visits the child three or four times per year. The evidence showed, although contradicted by Gray, that he had only visited G.W. three or four times per year since he moved away from Texas.[4] Furthermore, according to Green, G.W. viewed Gray as a stranger, and Gray has not bonded with G.W. because he has not spent enough time

---

[2] *In re G.R.W.*, 191 S.W.3d 896, 900 (Tex. App.–Texarkana 2006, no pet.) ("In fact, even without evidence establishing any blameworthiness of the parent, the parental presumption can be rebutted by other evidence establishing the statutorily required negative effect on the child."); *In re Rodriguez*, 940 S.W.2d 265, 273-75 (Tex. App.–San Antonio 1997, writ denied) (concluding that nonparent had rebutted parental presumption solely by producing evidence that the effect on the child of being removed from the only home she had ever known would be "devastating").

[3] *Chavez v. Chavez*, 148 S.W.3d 449, 458-59 (Tex. App.–El Paso 2004, no pet.) (citing *De La Pena*, 999 S.W.2d at 529).

[4] I note that Green testified that even visits with a child once every two months, as Gray claimed he did, is inadequate for bonding to occur.

2

with her. Green stated that in order to bond with G.W., more frequent contact was necessary.

According to Green, after visiting Gray, G.W. has vomited due to her anxiety. Green testified that G.W. would "freak out" if she was removed from Shook's home and that she would vomit, scream, and cry. Due to G.W.'s separation anxiety, Green stated that the added stress of removing her from Shook's home could cause numerous problems for G.W.

Shook testified that G.W. has lived in her home since she was born, that she has been "raising" G.W. for approximately a year-and-a-half, and that G.W. spends more time with Shook than with Lucy. According to Shook, it would significantly impair G.W.'s physical health if Gray was appointed managing conservator because G.W. would be removed from the "only home she's ever known." Shook testified that G.W. had never been away from Shook, Shook's husband, or Lucy for more than "a night or two." Shook stated that G.W. has bonded with her and that it would be "devastating" to G.W. if she were removed from Shook's home. Shook testified that G.W. would suffer harmful effects if removed from her home because she would not have any family support in Seattle. Shook stated that appointing Gray managing conservator and removing G.W. from Shook's home would have harmful effects.

In this case, there was evidence presented that the danger of uprooting G.W. from Shook's home would significantly impair G.W.'s physical health and emotional development.[5] Therefore, the trial court could have reasonably concluded from the evidence that appointing Gray managing conservator would have the statutorily required

---

[5] *See In re G.R.W.*, 191 S.W.3d at 900; *Chavez*, 148 S.W.3d at 458-59; *In re Rodriguez*, 940 S.W.2d at 273-75.

3

negative effect on G.W.[6]  Because there is some evidence of a substantive and probative character to support the trial court's decision, I believe that the trial court did not abuse its discretion by concluding that Gray's appointment as managing conservator would significantly impair G.W.'s physical health or emotional development.[7]  Therefore, I would affirm the trial court's judgment.

_____
LINDA REYNA YAÑEZ,
Justice

Delivered and filed the
30th day of November, 2010.

---

[6] *See* TEX. FAM. CODE ANN. § 153.131; *In re G.R.W.*, 191 S.W.3d at 900; *Chavez*, 148 S.W.3d at 458-59; *De La Pena*, 999 S.W.2d at 529 ("We also agree that because safety, security, and stability are critical to child development, the danger of uprooting a child may in some instances rise to a level that significantly impairs the child's emotional development."); *In re Rodriguez*, 940 S.W.2d at 270-75; *see also In the Interest of R.T.K.*, No. 14-08-00948-CV, 2010 Tex. App. LEXIS 7098, at *24 (Tex. App.–Houston [14th Dist.] Aug. 31, 2010, no pet. h.) (mem. op.) (concluding that the record sufficiently supported the trial court's conclusion that the nonparent rebutted the presumption found in section 153.131(a) because based on the evidence presented, the trial court could have reasonably concluded that removal of the child from "the only home he has known" would significantly impair his emotional development).

[7] *See Whitworth*, 222 S.W.3d at 623; *see also In the Interest of C.A.M.M.*, 243 S.W.3d at 214-15 ("But the fact that a trial court may decide a matter within its discretionary authority in a different manner from an appellate court in a similar circumstance does not demonstrate an abuse of discretion.") (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)).